**UNITED STATES of America,**
**Appellee,**

v.

**Christopher SURDOW, Defendant–**
**Appellant.**

**No. 04–2459CR.**

United States Court of Appeals,
Second Circuit.

Feb. 9, 2005.

John F. Carman, Garden City, New York, for Appellant.

Demetri M. Jones, Assistant United States Attorney (Barbara D. Underwood, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

PRESENT: Honorable JAMES L. OAKES, Honorable REENA RAGGI, and Honorable RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Defendant-appellant Christopher Surdow appeals a final judgment convicting him after a jury trial of distributing, attempting to receive, and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (5)(B). We assume the parties' familiarity with the facts and the record of proceedings in this case, which we reference only as necessary to explain our decision.

### 1. *Preclusion of Extrinsic Evidence*

Surdow submits that the district court's refusal to admit extrinsic evidence to impeach prosecution rebuttal witness Maria Welcom, Surdow's ex-wife, requires reversal of his conviction and a remand of his case for a new trial. We disagree. We review a trial judge's evidentiary rulings deferentially for abuse of discretion and will not reverse unless an error affects a party's substantial rights. *See United States v. Schultz*, 333 F.3d 393, 415 (2d Cir.2003) (quoting *Old Chief v. United States*, 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)), *cert. denied*, 540 U.S. 1106, 124 S.Ct. 1051, 157 L.Ed.2d 891 (2004). That is not this case.

Rule 613(b) of the Federal Rules of Evidence states that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Fed.R.Evid. 613(b). The rule does not specify any particular time when the opportunities to explain and interrogate must be afforded. *See* Adv. Comm. Note to 1972 Proposed Rule 613, Note to Subdivision (b) (explaining that the "traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposing party an opportunity to examine on the statement with no specification of any particular time or sequence"); *see also Weinstein's Federal Evidence* § 613.05[1] at 613–18 (2004). Nevertheless, a trial court's broad discretion in controlling "the mode and order of interrogating witnesses and presenting evidence," Fed.R.Evid. 611(a), permits it to exclude extrinsic impeachment evidence "that was not revealed while the witness was on the stand," or at least before the witness was permitted to leave the court, *Weinstein's Federal Evidence* § 613.05[1] at 613–19; *see also Unit-*

ed States v. Schnapp, 322 F.3d 564, 571 (8th Cir.2003) (quoting United States v. Sutton, 41 F.3d 1257, 1260 (8th Cir.1994) (Rule 613(b)'s "procedure 'is not mandatory, but is optional at the trial judge's discretion.'")); United States v. Young, 248 F.3d 260, 268 (4th Cir.2001) ("[E]ven if all the foundational elements of Rule 613 are met, a district court is not unequivocally bound to admit any or all extrinsic evidence of a prior inconsistent statement. Rather, a district court may still exercise its discretion to exclude such evidence[.]"). Indeed, a court may reasonably expect that, to ensure the orderly conduct of a trial, an impeaching party that does not itself intend to confront a witness with the particulars of a purportedly inconsistent statement will, at the very least, "inform[ ] the court and opposing counsel, *at the time the witness testifies*, of the intention to introduce" impeaching extrinsic evidence so that appropriate steps may be taken to "keep the witness available to be called to explain the statement." *Weinstein's Federal Evidence* § 613.05[5] at 613–28 (emphasis added). Once so advised, a court may, in its discretion "require that the impeaching statement be used while the witness is on the stand or immediately after," so that the witness could then be recalled "at once to explain the statement." *Id.; see* Fed.R.Evid. 611(a).

In this case, Surdow's counsel did not provide the court or the prosecutor with notice, "at the time the witness testifie[d]," of his wish to impeach Maria Welcom with extrinsic evidence. He first proffered extrinsic impeachment evidence only after the witness had been excused. As a consequence, for the court to afford the witness and the prosecution the opportunities mandated by Rule 613(b), it would have had to re-summon the witness to court, a process that would necessarily have delayed a trial in which the parties were otherwise ready to rest. Although Surdow submits that the delay would not have exceeded a day, we cannot say that the trial court abused its discretion in concluding that the defense's proffer of extrinsic impeachment evidence in this case came "too late" to be submitted to the jury.[1] Trial Tr. at 376. *Cf. Harris v. Barkley*, 202 F.3d 169, 174 (2d Cir.2000) (noting trial judge enjoys discretion, permitting it to exclude defense witness and force defendant to rest, when defense witness is not present on scheduled trial day).

■ In any event, even if there was error and if that error was of constitution-

1. The record is somewhat ambiguous as to whether defense counsel learned of the proffered extrinsic evidence during or after Maria Welcom's testimony. Because the source of the evidence, Surdow's father, had been in the courtroom throughout trial; because a recess between Welcom's direct and cross-examination would have afforded the father an opportunity to speak to defense counsel; and because counsel, on cross-examination, asked Welcom a general question about "complain[ts] to Surdow family members," Trial Tr. at 367–68, it appears that the disclosures were made—or certainly should have been made—before Welcom was excused from court. In short, this is not a case where counsel's belated disclosure of extrinsic evidence of impeachment might be excused by unavoidable late discovery.

Indeed, at one point, in his cross-examination of Welcom, counsel did ask her whether she "used to complain to Surdow family members" about defendant's brother's use of her family's computer. *Id.* Because Surdow did not argue in the district court, and does not argue on appeal, that this satisfied his notice obligation under Rule 613(b), *see* Appellant Br. at 11–12 ("the fact that the witnesses were not confronted with the inconsistency at the time that they testified is irrelevant"), we do not address that possibility, *see* Fed. R.App. P. 28(a)(8)-(9); *see also United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir.2003) (court need not consider argument not adequately raised in appellate brief).

al dimension, we conclude that it was harmless beyond a reasonable doubt given the significant evidence of Surdow's guilt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that "[t]he constitutionally improper denial of a defendant's opportunity to impeach a witness ... like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis"); *United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir.1979) (applying harmless-error analysis to evidentiary challenge under Rule 613(b)); *accord United States v. Young*, 248 F.3d at 268–69; *United States v. Valencia*, 913 F.2d 378, 385–86 (7th Cir.1990).

Not only was the prosecution able to prove that child pornography had been transmitted from an AOL account established and used by defendant, it introduced evidence of child pornography actually seized from defendant's home. Although defendant attempted to blame his brother for this conduct by testifying that his brother routinely used defendant's home computer and had access to defendant's AOL accounts, this contention was effectively refuted by defendant's own inculpatory post-arrest admissions. Defendant was careful in these admissions not to acknowledge trafficking in *child* pornography; but, he admitted that he used his internet accounts to transmit graphic sexual images and that he had difficulty distinguishing between adult and child pornography. He further admitted that AOL had terminated several of his past internet accounts because he was using them to trade graphic images over the internet. Indeed, he admitted using various AOL screen names that had appeared in child pornography chat rooms. At no time in his post-arrest interview did defendant mention that his brother ever used defendant's computer, much less did he suggest that his brother may have been responsible for the child pornography at issue. In light of this evidence, even if the defense could have used extrinsic evidence to impeach Surdow's ex-wife's testimony that defendant's brother did not use the Surdows' home computer,[2] we are convinced from the record as a whole that the exclusion of this evidence was harmless.

In sum, while we conclude that the district court did not abuse its discretion in precluding the defense from offering belatedly disclosed extrinsic evidence to impeach a witness who had already been excused, we further conclude that, even if such preclusion was error, the error was harmless beyond a reasonable doubt.

### 2. *Sentencing Challenge*

Relying on *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Surdow raises a Sixth Amendment

---

**2.** The excluded extrinsic evidence would, at best, have impeached Maria Welcom's testimony that the brother did not use the Surdows' home computer; it would not have itself proved such use, much less the brother's transmittal, receipt, or possession of the charged child pornography. Nor would the excluded evidence have impeached Welcom's mother (with whom the Surdows resided at the relevant time), who similarly testified that defendant's brother rarely visited her home. In any event, as the government notes, it is difficult to discern on the present record whether a jury would even have found the extrinsic evidence to have impeached Maria Welcom given that it would have been introduced through Surdow's father, a witness inclined toward defendant, and might be explained as referring to the brother's use of defendant's AOL accounts, not defendant's home computer, a significant distinction in that child pornography was seized from the Surdows' home as well as linked to defendant's AOL accounts.

challenge to the application of the United States Sentencing Guidelines to the calculation of his sentence. In light of the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and this court's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), this case is remanded to the district court for further proceedings in conformity with *Crosby*.

For the reasons stated, we reject Surdow's challenges to the judgment and conviction entered against him on April 29, 2004, except for his Sixth Amendment challenge to his sentence, on which point we REMAND to the district court for further proceedings consistent with this order.